UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MONSERRATE MARTINEZ-FIGUERORA, | ) ) ) | CASE NO. 1:16CV2544 |
| Plaintiff, | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | ) ) | |

Plaintiff Monserrate Martinez-Figuerora ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on February 16, 2017, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence. ECF Dkt. #13. Defendant filed a response brief on April 19, 2017. ECF Dkt. #15. Plaintiff filed a reply brief on May 3, 2017. ECF Dkt. #16.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

**I. FACTUAL AND PROCEDURAL HISTORY**

On May 15, 2013, Plaintiff protectively filed an application for SSI, alleging disability beginning July 18, 2006. ECF Dkt. #11 ("Tr.") at 231.[2] Plaintiff's application was denied initially and upon reconsideration. *Id.* at 174, 186. Plaintiff then requested a hearing, which was held on

---

[1] On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

July 7, 2015. *Id.* at 80. On October 7, 2015, the ALJ issued a decision denying Plaintiff's SSI claim. *Id.* at 56. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the October 7, 2015, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's October 7, 2015, decision on October 19, 2016. ECF Dkt. #1. On February 16, 2017, Plaintiff filed a brief on the merits. ECF Dkt. #13. Defendant filed a response brief on April 19, 2017. ECF Dkt. #15. Plaintiff filed a reply brief on May 3, 2017. ECF Dkt. #16.

## II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.     Medical Evidence

In June 2011, Eulogio Sioson, M.D., submitted a consultative report after examining Plaintiff. Tr. at 305. Dr. Sioson stated that Plaintiff indicated that her medical problems included joint pain, hypertension, and asthma. *Id.* On physical examination, Plaintiff was unable to bear weight on her right leg and used crutches for assistance, but was able to climb on and off the examination table. *Id.* at 306. Plaintiff did not exhibit swelling, heat, redness, or deformity in her joints, and she was able to grasp and manipulate with both hands. *Id.* Dr. Sioson indicated that Plaintiff had severe lower back tenderness and diminished sensation in both thighs. *Id.* Plaintiff had no muscle atrophy. *Id.* Dr. Sioson diagnosed Plaintiff with hypertension, mild asthma, and back and knee pain, and stated that "based on unusually severe range of motion from pain and above findings, functional work-related activities would be difficult to assess at this time." *Id.*

X-rays of Plaintiff's lumbar spine, taken in June 2011, showed no acute findings according to Aqeel Chowdhry, M.D. Tr. at 310. The x-rays showed minimal narrowing at L5-S1, however, the remainder of Plaintiff's disc spaces were preserved and there was no vertebral body compression fracture. *Id.* Dr. Chowdhry indicated that Plaintiff's "[a]pparent mild scoliosis may be positional" and that her "[v]isualized sacroillac and hip joint spaces [were] grossly unremarkable." *Id.*

On September 22, 2011, Plaintiff underwent a consultative psychological evaluation performed by Evelyn T. Rivera, Ph.D. Tr. at 320. Dr. Rivera diagnosed Plaintiff with: panic disorder with agoraphobia; depressive disorder, not otherwise specified; rule-out borderline intellectual functioning/mild mental retardation; arthritis; and a global assessment of functioning

-2-

("GAF") score of 54. *Id.* at 322. Plaintiff reported that she had never worked and that she could cook, clean, and "do all the tasks of daily living," but indicated that she had difficulty cleaning at times due to her arthritis. *Id.* Dr. Rivera stated that Plaintiff appeared to have some difficulty remembering information, particularly long-term information, which could be related to her depressive symptoms and/or cognitive limitations, and that this could affect her ability to follow and carry out instructions. *Id.* at 323. Additionally, Dr. Rivera indicated that Plaintiff's anxiety made it difficult for her to pay attention, concentrate, and perform simple or multistep tasks, and that her anxiety symptoms and low energy may make it difficult for her to respond appropriately to supervisors and coworkers. *Id.*

In November 2011, James Cozy, Ph.D., completed a Medical Functional Capacity Assessment on behalf of Plaintiff. Tr. at 329. Dr. Cozy opined that Plaintiff was markedly limited in every category of: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. *Id.* The only areas where Dr. Cozy did not assess Plaintiff as markedly limited were her ability to: interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take precautions. *Id.* Dr. Cozy opined that Plaintiff was unemployable. *Id.*

On May 25, 2012, Plaintiff reported chest pain on exertion, shortness of breath, abdominal pain, no muscle aches or weakness, no joint pain, no back pain, and pain in her hands, elbows, and knees. Tr. at 360. On May 29, 2012, radiological images showed little evidence of significant degenerative change and suggested patellofemoral instability bilaterally and possible erosive arthropathy in Plaintiff's hip. *Id.* at 384. Plaintiff reported continued knee and hip pain to Tammy Vargas, M.D., on June 22, 2012. *Id.* at 356. On July 20, 2012, Plaintiff was seen by Dr. Vargas and reported continued shortness of breath, as well as arthralgias with pain in her hips and knees. *Id.* at 351. Plaintiff did not report muscle aches, muscle weakness, arthralgias, joint pain, or back pain. *Id.* at 353. On examination, Plaintiff had normal recent memory, remote memory, and muscle strength and tone. *Id.* at 353-54.

In July 2013, Plaintiff presented to the emergency room complaining of right flank and lower abdominal pain. Tr. at 496. A CT scan of Plaintiff's abdomen/pelvis was unremarkable. *Id.* at 498-

500. On August 19, 2013, Dr. Sioson performed manual muscle testing and found that Plaintiff had: normal hand grasp, manipulation, and pinch on both sides; normal range of motion in her cervical spine and elbow; some loss of flexion, extension, abduction, and rotation in her shoulder; normal range of motion in her wrists, hands, fingers, and ankles; and some loss of range of motion and flexibility in her hips, knees, and dorsolumbar spine. *Id.* at 434-36. Dr. Saison reported normal motor findings for Plaintiff, except in her hip flexors and extendors, and knee flexors and extenders, but indicated that these results were not reliable since they were affected by pain in her back and knee. *Id.* at 434. As for mental disorders, Dr. Sioson indicated that Plaintiff was not emotionally labile and was able to maintain attention and concentration. *Id.* at 438. Dr. Sioson opined that Plaintiff's work-related activities would be limited to light or sedentary work. *Id.*

On August 27, 2013, Plaintiff was seen by Dr. Rivera for a psychological evaluation. Tr. at 446. Plaintiff reported that she was applying for Social Security benefits for the third time due to osteoporosis, chronic anemia, leg bone degeneration, and depression. *Id.* Continuing, Plaintiff indicated that she had been depressed in the past, but never received mental health treatment, and that she cried at times. *Id.* at 447. Dr. Rivera reported that Plaintiff: was adequately groomed and she was dressed casually, although she made odd facial gestures at times; displayed speech and thoughts that were logical and coherent; had low energy and stated that her anemia worsened the problem; and appeared to be functioning at the borderline intellectual to mild mental retardation level based on her verbal ability in Spanish. *Id.* Additionally, Dr. Rivera noted that Plaintiff appeared to have some cognitive limitations and that further assessment would be warranted to determine her cognitive ability. *Id.* Based on the evaluation, Dr. Rivera assessed that Plaintiff appeared to have some cognitive limitations and that further assessment would be warranted to determine the impact the limitations had on her ability to: understand, remember, and carry out instructions; maintain attention, concentration, and persistence and pace to perform simple tasks and multi-step tasks; and respond appropriately to work pressures in a work setting. *Id.* at 449. Dr. Rivera also stated that Plaintiff's low energy and depressed mood may impact her ability to respond to supervisors and coworkers, and that social skill deficits could affect her ability to respond appropriately to supervisors and coworkers. *Id.*

In September 2013, State agency medical consultant Leanne M. Bertani, M.D., opined that Plaintiff had the ability to: lift/carry up to fifty pounds occasionally and twenty-five pounds frequently; stand/walk about six hours total during an eight-hour workday; sit for about six hours total during and eight-hour workday; frequently climb ramps/stairs; frequently stoop, kneel, crouch, or crawl; and occasionally climb ladders, ropes, and/or scaffolds. Tr. at 151-52. Dr. Bertani further opined that Plaintiff had no limitations in pushing or pulling, and had no manipulative or environmental limitations. *Id.* at 152. Continuing, Dr. Bertani cited medical records showing that Plaintiff had normal range of motion in all her joints and x-rays showing minimal narrowing in her lower back. *Id.*

Also in September 2013, a State agency psychological consultant, Karen Terry, Ph.D., opined that Plaintiff would be moderately limited in understanding and remembering detailed instructions and would be limited to performing simple, routine, one-to-three step tasks with instructions that were literal, concrete, and comprised of basic language. Tr. at 153. Dr. Terry further opined that Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods, but could manage tasks that were brief in nature that did not have fast-paced performance requirements or strict production quota requirements and did not require extended periods of close attention to detail. *Id.* at 154. Continuing, Dr. Terry stated that Plaintiff would be limited to performing tasks in environments with only occasional contact with the public, supervisors, and coworkers. *Id.* Finally, Dr. Terry opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in work setting and would need to perform tasks in an environment where her duties were relatively static and changes could be explained. *Id.* The findings of Dr. Bertani and Dr. Terry were affirmed upon reconsideration. *Id.* at 158-72.

In January 2014, Plaintiff complained of chest pain and was able to ambulate without difficulty. Tr. at 546-47. It was noted that Plaintiff was negative for depression and memory loss, she was not nervous or anxious, and she did not report insomnia. *Id.* at 546. X-rays of Plaintiff's knees revealed no evidence of acute displaced fracture, dislocation, or significant joint space narrowing, and no significant tight joint effusion. *Id.* at 896.

In March 2014, Plaintiff complained about right elbow pain and sought treatment from John N. Posch, M.D. Tr. at 521. Dr. Posch indicated that Plaintiff had a full range of motion and point tenderness just below her right humerous. *Id.* X-ray showed no acute or significant findings. *Id.* at 524, 867, 871-72, 874. Also in March 2014, Plaintiff visited Signature Health, Inc., for a diagnostic assessment. Tr. at 552. Plaintiff reported feeling depressed for the previous two months, and stated that she did not speak English and felt isolated at home. *Id.* Continuing, Plaintiff indicated that she had "been more tearful" for the previous two months, had a minimal interest in participating in hobbies or recreational activities, and had shattered dishes in anger in front of family members. *Id.* Plaintiff also reported difficulties sleeping because she felt scared. *Id.* at 558. It was noted that Plaintiff's mood/affect was flat. *Id.* at 559. Plaintiff's speech/language was marked as normal, but it was noted that her speech/language could not be assessed as she used a family member to translate. *Id.* Additionally, Plaintiff reported that she had no friends, but she had many family members who lived in the area and her relationships with them were generally healthy. *Id.* at 560.

On May 2, 2014, Plaintiff visited the emergency room, complaining of low back pain, rated as 6/10 for pain. Tr. at 858. The pain was moderate and "the same all the time." *Id.* A physical exam revealed tenderness and spasm in Plaintiff's lumbar back, but was otherwise unremarkable. *Id.* at 859. A bone density study performed on July 21, 2014, indicated that Plaintiff had osteopenia, not osteoporosis, and Plaintiff was told to take calcium and Vitamin D supplements. *Id.* at 844. X-rays of Plaintiff's upper spine showed mild diffuse degenerative disease, but no acute compression fractures and very mild scoliosis concave to the left. *Id.* at 846. The x-rays also showed diminished density in Plaintiff's hip. *Id.* at 848.

In September 2014, Plaintiff presented for counseling with a nurse practitioner and complained of poor sleep and mood control, and the impression was that she had major depressive disorder. Tr. at 667. At a counseling session in October 2014, Plaintiff reported gradual improvement in her mood, and that her sleep and psychomotor retardation had improved. *Id.* at 662. On November 14, 2014, Plaintiff underwent cystoscopy, bilateral retrograde pyelogram, and bilateral ureteral stent insertion. *Id.* at 921. Plaintiff also underwent a hysterectomy on that same day. *Id.* at 696. Ultrasounds performed on November 15, 2014, confirmed that the bilateral ureteral

stents were in good anatomical positions, and indicated that both of Plaintiff's kidneys showed mild hydronephrosis. *Id.* at 1113-13. On November 17, 2014, Plaintiff underwent a second operation related to bladder laceration from a postoperative complication. *Id.* at 919. Additional pain medication was prescribed for Plaintiff's pain from the surgeries on November 24, 2014. *Id.* at 604. On November 29, 2014, Plaintiff was seen in the emergency room for dehiscence resulting from her surgeries. *Id.* at 1051.

On December 3, 2014, Plaintiff was seen by Timothy O'Brien, M.D. Dr. O'Brien opined that Plaintiff had abdominal wound dehiscence with some subcutaneous tissue tunneling, and noted that the fascia appeared to be intact upon examination. Tr. at 1047. Plaintiff returned to Dr. O'Brien on December 10, 2014, for abdominal wound dehiscence and sharp excisional debridement was performed on the wound. *Id.* at 1044. Plaintiff was seen again for abdominal wall dehiscence on December 24, 2014. *Id.* at 1028. Pain in Plaintiff's abdomen continued throughout the remainder of December 2014. *Id.* at 1018, 1020. Also in December 2014, Plaintiff sought treatment for fibroids, and was negative for anxiety and memory loss. *Id.* at 599.

On January 6, 2015, Plaintiff was positive for dysuria and right flank pain. Tr. at 579. The following day, Plaintiff was seen again for abdominal wound dehiscence with continued drainage. *Id.* at 1012. On January 14, 2015, Plaintiff underwent a sharpexcisional debridement of the abdominal wound for her abdominal wound dehiscence. *Id.* at 1011. Plaintiff underwent esophagogastroduodenoscopy after complaining of abdominal pain. *Id.* at 1006. It was noted that there was diffuse antral gastritis with a few erosions in the prepyloric area, but the finding were otherwise normal. *Id.* at 1006-1007. On January 21, 2015, Plaintiff was again treated for abdominal wound dehiscence. *Id.* at 1245. It was noted that the wound continued to contract and that there was little drainage over the prior week. *Id.* Plaintiff was hospitalized for a urinary tract infection and lower abdominal pain on January 22, 2015, and was released on January 25, 2015, with a final diagnoses of urinary tract infection complicating the bilateral ureteral stent placement. *Id.* at 1223. On January 27, 2015, Plaintiff underwent surgery for bilateral ureteric obstruction, with ureteral stent removal. *Id.* at 1215. Plaintiff was again treated for abdominal wound dehiscence on February 11, 2015. *Id.* at 1207.

In February 2015, Plaintiff reported that her mood and sleep were "okay," and that she had supportive family and friends. Tr. at 673. Plaintiff stated that her sleep was "poor" in March 2015, and did not report any changes regarding her relationship with family and friends. *Id.* at 675. On March 26, 2015, Plaintiff underwent a physical therapy evaluation, and reported that she was experiencing back pain and rated the pain at 10/10, or 8/10 at best. *Id.* at 705. Continuing, Plaintiff reported that her right leg went numb at times and that her pain was worsening. *Id.* The plan implemented at the evaluation instructed Plaintiff to see a physical therapist one to three times per week for up to six weeks to work on activity tolerance, posture, restoration of lumbar range of motion, and improvement of right lower extremity myotomal strength. *Id.* at 706. On March 31, 2015, x-rays showed degenerative change in Plaintiff's medial tibiofemoral joint. *Id.* at 1177. In April 2015, Plaintiff reported that she was "feeling blah." *Id.* at 677. Also in April 2015, Plaintiff complained of tenderness in her lower spine and right elbow, and was referred for physical therapy. *Id.* at 680-81. In May 2015, Plaintiff presented for treatment and was positive for abdominal pain, back pain, and joint pain in her right knee. *Id.* at 801. Plaintiff was diagnosed with osteoartritis in her right knee, degenerative disc disease with mild scoliosis, and abdominal pain. *Id.*

### B.     **Testimonial Evidence**

The ALJ held a hearing on July 7, 2015. Tr. at 80. Plaintiff, her attorney, a vocational expert ("VE"), and an interpreter appeared for the hearing. *Id.* Plaintiff's attorney indicated that, since the application was for SSI, the alleged onset date would be the date the application was protectively filed. *Id.* at 81. Upon examination by the ALJ, Plaintiff testified that she did not drive and had never had a driver's license. *Id.* at 83. Plaintiff stated that she could read and write in Spanish, but could not read, write, or speak English. *Id.* at 83-84.

The ALJ then asked Plaintiff to describe the activities that she did around her home. Tr. at 84. Plaintiff testified that she: cooked some meals; went shopping with her daughter; and had some problems with her personal hygiene, grooming, and dressing, and that her daughter sometimes had to help dress her. *Id.* at 84-85. Continuing, Plaintiff stated that she visited with family and friends "at times" at either her home or their homes to talk. *Id.* at 85. Plaintiff testified that she liked to watch television and watched soap operas for fun. *Id.* When asked how she spent her typical day,

Plaintiff stated that she woke up around 8:00 A.M., visited the bathroom, had something to eat, and then watched a soap opera. *Id.* at 85-86. Plaintiff stated that she had to alternate between standing and sitting due to pain while she watched the soap opera. *Id.* at 86. Continuing, Plaintiff testified that she only left her home for appointments. *Id*. at 86.

The ALJ then asked Plaintiff to explain why she had never worked. Tr. at 86. Plaintiff testified that she had been ill since she was a child. *Id.* When asked about her ailments, Plaintiff stated that she had: arthritis in her hips and legs; trouble breathing at night; frequent gastritis; and depression. *Id.* at 87-88. Plaintiff also indicated that she was taking her medications as prescribed. *Id.* at 88. Next, Plaintiff testified that she could not lift anything heavy or lift anything for a long time due to arthritis in her hands. *Id.* at 89. Plaintiff stated that she could stand for thirty minutes before needing to sit, and that she could sit for thirty minutes before needing to stand. *Id.* Continuing, Plaintiff indicated that she had trouble reaching for objects due to back pain. *Id*. at 90. Plaintiff also stated that she had trouble being around others due to her depression. *Id.* The ALJ then asked Plaintiff whether she had trouble with her memory, to which she answered in the affirmative. *Id.* Finally, Plaintiff testified that her medications made her feel a little less depressed. *Id.* at 91.

After examining Plaintiff, the ALJ examined the VE. Tr. at 92. The ALJ posed a hypothetical individual with the following limitations: same age and education level of Plaintiff; lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours; sit for six hours; sit/stand option every hour for five minutes; occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; can balance and occasionally stoop and crouch; never kneel or crawl; can reach in front and occasionally reach overhead; can handle, finger, and feel; no exposure to hazardous conditions; push and pull with the upper extremities; occasionally push and pull with the lower extremities; simple, routine tasks with simple, short instructions; simple decisions and few workplace changes; superficial interactions with coworkers, supervisors, and the public; and no negotiations or confrontations. *Id.* at 93-94. Next, the ALJ asked whether the VE could identify any work in the regional or national economy for this hypothetical individual. *Id.* at 94. The VE

testified that such an individual could work as a laundry folder, cafeteria attendant, and/or vending machine attendant. *Id.* at 95-96.

The ALJ then added the following additional limitations to the hypothetical individual posed to the VE: no requirements to read instructions, write reports, or perform math calculations; and should be able to learn tasks through demonstration. Tr. at 96. The VE indicated that these additional limitations would not impact the hypothetical individual's ability to perform the jobs stated above. *Id.* The ALJ then asked if this hypothetical individual could still perform these jobs if that individual would be absent at least three days per month, to which the VE answered in the negative. *Id.* at 97. Plaintiff's attorney was then granted an opportunity to question the VE. *Id.* at 98-102. After Plaintiff's attorney finished questioning the VE, the ALJ concluded the hearing. *Id.* at 103-104.

### III. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After holding the hearing on July 7, 2015, the ALJ issued a decision on October 7, 2015. Tr. at 56. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 15, 2013, the date of her SSI application. *Id.* at 64. Continuing, the ALJ found that Plaintiff had the following severe impairments: bilateral knee degenerative joint disease; degenerative disc disease; right elbow tendinitis; gastritis; bilateral ureteral obstruction; hypertension; obesity; and major depressive disorder. *Id.* The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 65.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except that Plaintiff could: stand, walk, and sit for six hours in an eight-hour workday, but required a sit/stand option every hour for five minutes; occasionally climb ramps and stairs, but never climb ladders, ropes, and/or scaffolds; balance; occasionally stoop and crouch, but never kneel or crawl; reach in front and occasionally reach overhead; handle, finger, and feel; push and pull with the upper extremity and occasionally push and pull with the lower extremity; never be exposed to hazardous conditions; perform simple, routine tasks with simple, short instructions; make simple decisions and would

require few workplace changes; and have superficial interaction with coworkers, supervisors, and the public, with superficial referring to the intensity of the action, where there is no negotiation or confrontations. *Id.* at 68. Continuing, the ALJ stated that Plaintiff could not read instructions, write reports, or perform math calculations. *Id.* Further, the ALJ indicated that work Plaintiff could perform must be of the nature where she could learn the tasks through demonstration. *Id.*

After discussing Plaintiff's RFC, the ALJ indicated that Plaintiff had no past relevant work. Tr. at 73. The ALJ stated that Plaintiff was a younger individual on the date the application was filed, was illiterate or unable to communicate in English, and that the transferability of jobs skills was not an issue because Plaintiff did not have past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the above findings, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 15, 2013, the date her application was filed. *Id.* at 74.

## IV.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be

> considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

-12-

## VI.  LAW AND ANALYSIS

### A.  Substantial Evidence: RFC Finding

Plaintiff first asserts that the ALJ's RFC finding is not supported by substantial evidence because it did not properly account for all of her non-exertional mental impairments. ECF Dkt. #13 at 17. Continuing, Plaintiff states:

> While claimants are generally entitled to receive an explanation - *i.e.*, "good reasons" - when an ALJ discounts or even adopts a treating source's opinion, this entitlement does not extend to and ALJ's adoption nor rejection of the opinions of nontreating sources.

*Id.* at 17 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Quoting the federal regulations, Plaintiff states, "an ALJ 'must explain in the decision the weight given to the opinion of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist' unless a treating physician's opinion has been accorded controlling weight." *Id.* (quoting 20 C.F.R. §§ 416.1527(e)(2)(ii), 416.927(e)(2)(ii)). Plaintiff then asserts:

> [T]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

*Id.* (quoting Social Security Ruling ("SSR") 98-6p).

Next, Plaintiff states that the Sixth Circuit has held that and ALJ's error to exclude speed- and pace-based restrictions from an RFC determination when a claimant was found to have such limitations at prior steps of the sequential evaluation. ECF Dkt. #13 at 17-18 (citing *Ealy v. Comm'r of Soc. Sec.*, 594.F.3d 504, 516-17 (6th Cir. 2010)). Continuing, Plaintiff acknowledges that *Ealy* does not require further limitations in addition to limiting a claimant to simple, repetitive tasks for every individual found to have moderate difficulties in concentration, persistence, or pace. *Id.* (citing *Jackson v. Comm'r of Soc. Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011)). Plaintiff recognizes that, "[i]nstead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions. *Id.* (citing *Weagraff v. Comm'r of Soc. Sec.*, No. 1:11CV2420, 2013 WL 968268 (N.D. Ohio Jan. 7, 2013), *adopted* 2013 WL 980435; *Jackson*, 2011 WL 4943966, at *4).

Next, Plaintiff asserts that a review of the record indicates that Plaintiff required specific limitations regarding her moderate difficulties with concentration, persistence, or pace that were excluded from the ALJ's RFC determination without explanation. ECF Dkt. #13 at 18. Plaintiff correctly states that the ALJ determined that she had moderate limitations in concentration, persistence, and pace at step three of the sequential evaluation. *Id.* (citing Tr. at 66-67). Specifically, Plaintiff indicates that Dr. Terry opined that Plaintiff required a workplace with no fast-paced performance or strict production quota requirements, and that Dr. Terry's opinion was affirmed on reconsideration. *Id.* at 18-19 (citing Tr. at 153, 168-70).

Plaintiff argues that "[a]lthough the ALJ neither cites to these physicians [meaning Dr. Terry and the reviewing psychologist, Paul Tangeman, Ph.D.] by name nor cites to the appropriate exhibit numbers, she appeared to assign 'considerable weight' to these opinions when discussing 'the Agency psychological examiner.'" ECF Dkt. #13 at 18-19 (citing Tr. at 71). Continuing, Plaintiff avers that despite the assignment of considerable weight to these opinions, seemingly the most weight assigned to any opinion of record, the opinion of Dr. Terry and Dr. Tangeman that Plaintiff was limited to work without fast-paced performance or strict production quota requirements is absent from the ALJ's RFC finding without explanation. *Id.* at 19 (citing Tr. at 68).

After citing evidence in support of the ALJ's RFC finding, Defendant asserts that Plaintiff's argument fails for several reasons. ECF Dkt. #15 at 11-15. First, Defendant states that there is no requirement that the ALJ mention the names of physicians where, as here, the physicians are easily identified as the "the State agency psychological consultants at the initial and reconsideration levels," and the accompanying opinions from the record are cited. *Id.* at 16 (citing Tr. at 67).

Continuing, Defendant avers that Plaintiff's argument that the ALJ erred by assigning controlling weight to the opinions of Dr. Terry and Tangeman, but nevertheless neglecting to include their limitations on the RFC determination, is based on a faulty premise. ECF Dkt. #15 at 16. Defendant asserts that the ALJ assigned controlling weight to Dr. Rivera's August 2013 opinion, rather than the opinions of Dr. Terry and Dr. Tangeman. *Id.* (citing Tr. at 71). In support of this position, Defendant indicates that the ALJ stated that controlling weight was given to the opinion of the "Agency psychological examiner," who concluded that Plaintiff would have difficulty

-14-

performing complex tasks, interacting with supervisors as well as coworkers, and responding to workplace pressures." *Id.* (citing Tr. at 71). Defendant asserts that this statement clearly refers to Dr. Rivera because she examined Plaintiff in August 2013, and Dr. Terry and Dr. Tangeman never examined Plaintiff. *Id.* (citing Tr. at 67, 153, 168-70).

Next, Defendant states that an RFC determination is a legal decision, rather than a medical decision, and the development of a claimant's RFC is solely within the ALJ's province. ECF Dkt. #15 at 16. Defendant continues, asserting that a statement from a medical source about a claimant's abilities is medical opinion evidence that an ALJ must consider together with all of the other evidence when assessing an individual's RFC. *Id.* Accordingly, Defendant asserts that the final responsibility of deciding a claimant's RFC is reserved to the Commissioner. *Id.* at 17 (citing 20 C.F.R. § 416.927(e)(1)). Defendant argues that the ALJ reasonably determined that Plaintiff's mental impairments required limitations that were incorporated in the RFC findings, and that Plaintiff has failed to produce evidence sufficient for the ALJ to draw the conclusion that she required additional restrictions such as a prohibition against fast-paced work or work with strict production quotas. *Id.*

Plaintiff's arguments are without merit. As an initial matter, Defendant is correct in asserting that Plaintiff improperly attributes the ALJ's assignment of considerable weight to the opinions of the State agency psychological consultants, Dr. Terry and Dr. Tangeman. The ALJ discussed the opinions of Dr. Terry and Dr. Tangeman on page sixty-seven of the decision, where it is stated that "partial weight is accorded to these assessments." Tr. at 67. On page seventy-one of the decision, the ALJ assigned considerable weight to the opinion of the "Agency psychological examiner," who concluded that Plaintiff "would have difficulty performing complex tasks, interacting with supervisors as well as coworkers, and responding to workplace pressures." *Id.* at 71. It appears from the ALJ's decision that the ALJ assigned considerable weight to the opinion of Dr. Rivera, a State agency psychological examiner, as the summary of the opinion to which considerable weight was assigned is consistent with Dr. Rivera's conclusions in her functional assessment of Plaintiff. *See id.* at 449. While the undersigned agrees that the ALJ could have been more precise when citing to the record, and that more precise citations would have made it easier to discern the opinion to

-15-

which considerable weight was assigned, it cannot be said that the ALJ assigned considerable weight to the opinions of Dr. Terry and Dr. Tangeman, as claimed by Plaintiff.

First, the ALJ indicates that considerable weight was assigned to the opinion of the "Agency psychological examiner." *Id.* at 71. Dr. Terry and Dr. Tangeman were State agency psychological consultants, and thus never examined Plaintiff. Further, the ALJ addressed the opinion of Dr. Terry and Dr. Tangeman on page sixty-seven of the decision, referring to the opinions of the "State agency psychological consultants," and indicated that "partial weight is accorded to these assessments." *Id.* at 67. Additionally, the opinions offered by Dr. Terry and Dr. Tangeman do not align with the substance of the opinion to which the ALJ assigned considerable weight. *See id.* at 67, 71, 153-54, 168-70, 449. A careful reading of the ALJ's decision and the record does not support Plaintiff's conclusion that the ALJ assigned considerable weight to the opinions of Dr. Terry and Dr. Tangeman, but rather that these opinions were only assigned partial weight. *See id.*

Even assuming that Plaintiff had correctly identified the weight assigned to the opinions of Dr. Terry or Dr. Tangeman, Plaintiff fails to identify any requirement imposed on the ALJ to adopt all of the limitations assigned by Dr. Terry, Dr. Tangeman, or any State agency examining physician. Plaintiff does not claim that the opinion that the ALJ assigned considerable weight was offered by a treating physician, which would subject the ALJ to more stringent requirements if less than controlling weight was assigned to the opinion. In any event, the final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2).

Here, the ALJ explained why partial weight was assigned to the opinions of Dr. Terry and Dr. Tangeman. After reiterating the substance of opinions offered by Dr. Terry and Dr. Tangeman, the ALJ stated:

> Although the undersigned finds that the longitudinal record supports moderate limitations in concentration, persistence, and pace, she noted the record supports that [Plaintiff] is more limited in her ability to engage in social functioning. However, the undersigned finds that the record indicates [Plaintiff's] limitation in her performance of activities of daily living is more related to her subjective physical, rather than mental, complaints. Thus, partial weight is accorded to these assessments.

Tr. at 67. The ALJ discussed Plaintiff's impairments, her activities of daily living, and then the opinions of Dr. Terry and Dr. Tangeman. *Id.* at 65-67. After this discussion, the ALJ explained why

-16-

partial weight was assigned to the opinions offered by Dr. Terry and Dr. Tangeman. Likewise, the ALJ addressed the opinion of Dr. Rivera, the State agency psychological examiner, and explained why considerable weight was assigned to her opinion. *Id.* at 71. After assigning considerable weight to Dr. Rivera's opinion, the ALJ limited Plaintiff's RFC accordingly. Tr. at 68, 71.

In sum, Plaintiff asserts that the ALJ assigned considerable weight to the opinions of Dr. Terry and Dr. Tangeman, but then failed to explain why their limitations were not wholly adopted by the ALJ in the RFC determination. This assertion is belied by the fact that the ALJ did not assign considerable weight to the opinions of Dr. Terry and Dr. Tangeman, but instead assigned these opinions only partial weight. Moreover, the ALJ explained why partial weight was assigned to the opinions of Dr. Terry and Dr. Tangeman, and why considerable weight was assigned to the opinion of Dr. Rivera. *See* Tr. at 67, 71. Additionally, Plaintiff's argument is not advanced by her reliance on *Ealy*, which requires a fact-based approach to determine whether a claimant required specific limitations, because the ALJ did rely on the facts, *i.e.*, the medical records and opinion evidence, when making the RFC determination. For these reasons, the ALJ's RFC finding is supported by substantial evidence and Plaintiff's claim fails.

### B. Substantial Evidence: Step Five

Plaintiff also asserts that the ALJ's reliance on the VE's testimony that Plaintiff could perform the jobs of laundry folder, cafeteria attendant, and vending machine attendant at step five warrants remand because the ALJ's RFC findings preclude performance of each of these jobs. ECF Dkt. #13 at 19-21. Specifically, Plaintiff claims that the ALJ's hypothetical individual posed to the VE, whose limitations mirrored those in the ALJ's RFC finding, included a limitation for occasional overhead reaching with the upper extremities, however, the jobs presented by the VE all required frequent reaching. *Id.* at 20. Plaintiff avers that the VE's erroneous characterization of the exertional requirements of these jobs fails to accommodate her RFC, and calls into question both the probative value and reliability of the VE's testimony. *Id.* at 20-21. Concluding, Plaintiff asserts that the ALJ's finding precluded the performance of the jobs presented by the VE, and thus the ALJ's finding at step five was not supported by substantial evidence. *Id.* at 21.

-17-

Defendant contends that the ALJ was not obligated to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p, which requires that the ALJ elicit a reasonable explanation for any conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). ECF Dkt. #15 at 18. Continuing, Defendant argues that there was no apparent conflict between the VE's testimony and the DOT. *Id.* Defendant indicates that Plaintiff's counsel was afforded the opportunity to cross-examine the VE at the hearing and did not raise the issue of the frequency of overhead reaching. *Id.* at 19. According to Defendant, the ALJ properly relied on the testimony of the VE indicating that Plaintiff could perform jobs in the national economy. *Id.*

Plaintiff's arguments are without merit. There was no apparent conflict between the VE's testimony and the DOT. The only alleged conflict is whether the frequency of overhead reaching precluded the jobs identified by the VE. The specific reaching requirements for these jobs is not grounds to find an apparent conflict as the ALJ is not required to know every aspect of each job listed in the DOT. The Sixth Circuit has held:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. The ALJ fully complied with SSR 00–4p when he asked the VE whether there was "any discrepancy between her opinions and the DOT standards for the requirements of the jobs she named." As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief.

*Beinlich v. Comm'r Soc. Sec.*, 345 Fed. Appx. 163, 168-69 (6th Cir. 2009) (internal citations omitted). In the instant case, the ALJ asked the VE if her testimony was consistent with the DOT. Tr. at 97. The VE explained that the DOT did not address absenteeism, and that her conclusions regarding absenteeism were from her own research, and further explained how her testimony was consistent with the DOT. *Id.* at 97-98. As stated by the Sixth Circuit, the ALJ was not obligated to further investigate the accuracy of the VE's testimony and this obligation fell to Plaintiff's counsel. Here, like in *Beinlich*, Plaintiff's counsel did not question the VE regarding any discrepancy between her testimony and the DOT when afforded the opportunity. *See* Tr. at 98-103.

As stated by the Sixth Circuit, the fact that Plaintiff's counsel failed to investigate the accuracy of the VE's testimony when afforded the opportunity is not grounds for relief. *Beinlich*, 345 Fed. Appx. at 168-69. Accordingly, the ALJ's conclusion at step five is supported by substantial evidence and Plaintiff's claim fails.

## VII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: December 27, 2017               */s/George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).